IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KIMBERLY PASSANANTI,                )
                                    )
                    Plaintiff,      )
                                    )
                                    )
-vs-                                )    Case No. 08 C 2803
                                    )
                                    )    Chicago, Illinois
THE COUNTY OF COOK, ILLINOIS,       )    June 1, 2010
a unit of local Government,         )    2:00 o'clock p.m.
COOK COUNTY SHERIFF'S               )
DEPARTMENT, JOHN P. SULLIVAN,       )
in his individual capacity,         )
                                    )
                    Defendants.     )

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE JOHN W. DARRAH

APPEARANCES:

For the Plaintiff:        ANDREOU & CASSON, LTD.
                          BY:  MR. LUKE A. CASSON
                          661 West Lake Street
                          Suite 2N
                          Chicago, Illinois 60661

For the Defendants:       COOK COUNTY
                          STATE'S ATTORNEY'S OFFICE
                          BY:  MR. DONALD R. HALLSTEN, JR.
                               MR. JAMIESON BRENT BOWMAN
                          500 Richard J. Daley Center
                          Chicago, Illinois 60602


Mary M. Hacker
Official Court Reporter
United States District Court
219 South Dearborn Street, Suite 1212
Chicago, Illinois  60604
Telephone:  (312) 435-5564

1          (Proceedings in open court:)

2               THE COURT:  08 C 2803.  We're in the courtroom

3     obviously.  No one else is present except counsel.

4               Do you want to identify yourselves for the record,

5     please?

6               MR. CASSON:  Luke Casson for plaintiff, Judge.

7               MR. HALLSTEN:  Donald Hallsten and Jamieson Bowman

8     on behalf of the defendants, your Honor.

9               THE COURT:  Good afternoon all.

10              MR. CASSON:  Good afternoon.

11              THE COURT:  First order of business, defendant has

12    filed a motion styled a motion to compel and for other

13    relief.  The defendant filed an answer pointing out that

14    there are some problems with the motion, including the

15    failure to observe local rules regarding meeting and

16    conferring as to any discovery disputes.

17              The matter focuses on the fact that interrogatories

18    were not timely answered.  It appears that the defendant put

19    them in the mail on the day they were due, and so they

20    weren't received until two days later.

21              MR. CASSON:  Yes, your Honor.

22              THE COURT:  But the motion doesn't show, other than

23    some general conclusions, about how much prejudice was

24    incurred by the plaintiff, cites no authority.

25              The reply to the defendants' response recites that

1    the motion is going to be converted into a rule to show

2    cause.  And, again, the defendant responds that there hasn't

3    been compliance with the local rule, including local

4    Rule 16.1.

5              There really is no actual prejudice shown or

6    alleged, for that matter.  And so the motion as it was

7    originally styled, a motion to compel, is denied.

8              And the motion to convert the motion to compel to

9    motion for rule to show cause is also denied.

10             I have the final pretrial order, and the pretrial

11   order sets out certain exhibits that were offered by the

12   plaintiff and objected to their receipt in evidence by the

13   defendant.

14             I'm looking at Page 4 of the proposed pretrial

15   order and there's no -- you don't set out any basis for your

16   objection.

17             MR. HALLSTEN:  I want to make sure we're on the

18   same page, your Honor.  My Page 4 of the pretrial order is

19   defendants' contested facts.  Are we in exhibits, your Honor?

20             THE COURT:  Yes.

21             MR. HALLSTEN:  Okay.

22             THE COURT:  (2)(c)(1) at the bottom of page --

23   there appears to be --

24             MR. HALLSTEN:  Any exhibit listed that doesn't have

25   an objection, your Honor, is not objected to.

1          THE COURT:  Well, I don't see -- I'm not trying to

2   be difficult, but I don't see any objection to anything under

3   2)(c)(1).

4          MR. HALLSTEN:  I believe that, your Honor, you may

5   have a prior version of the pretrial order.

6          THE COURT:  Well, I only have one version.

7          MR. CASSON:  Your Honor, if I may, most of the --

8   I've got an extra copy for you.  What was sent -- to fill

9   your Honor in, there was a -- the plaintiff filed the

10  pretrial order.  Defense provided some changes yesterday,

11  which we incorporated --

12         THE COURT:  Why don't you hand that up, Mr. Casson,

13  if you would.

14     (Document tendered.)

15         MR. HALLSTEN:  Did you electronically file the

16  pretrial order?

17         MR. CASSON:  No.

18         MR. HALLSTEN:  Okay.  It's on Page 6, your Honor, I

19  believe.

20         THE COURT:  Okay.  I see it now, and I see your

21  objections, Counsel.

22         It's going to be the ruling of the Court that all

23  objections must be made at the time of trial.  If an

24  objection is not made when an exhibit is first introduced, I

25  will deem the exhibit to be admitted without objection.

1        No exhibit will be deemed admitted unless it is

2    specifically referred to in the courtroom and by exhibit

3    number and in front of the jury.

4        So the exhibits that are shown as offered in the

5    pretrial order and the objections that are made to some of

6    them are not in evidence unless they are offered at the time

7    of trial and objected to at the time of trial.  Fair enough?

8        MR. HALLSTEN:  Yes, your Honor.

9        MR. CASSON:  Fair enough.

10        THE COURT:  Okay.  I take it there's no depositions

11    that will be read into evidence?

12        MR. CASSON:  There won't, your Honor.  I don't

13    intend to use any except for the purpose of impeachment.

14        MR. HALLSTEN:  Same here, your Honor.

15        THE COURT:  Okay.  And you estimate the trial will

16    take five days?

17        MR. CASSON:  That's correct.  That's an outside

18    guess, your Honor.  I'm trimming down my end.  I've trimmed

19    down four witnesses today.  I may get done in three, which

20    raises the issue, when will we start and when will we --

21        THE COURT:  We can talk about that informally in

22    just a moment, Mr. Casson.  Don't forget your question.

23        The Federal Rules, as you know, require a jury to

24    be composed of at least six people, but if we impanel more

25    than six people, those people can all deliberate.  So if we

1    impanel eight, they can deliberate.  We can still leave two

2    jurors and have a validly constituted jury.  We'll talk about

3    my procedure regarding the voir dire system.

4         I also looked at your questions; some of them I'm

5    not going to ask.  Do you enjoy your working environment, do

6    you believe an employee has the right to bring a suit, all

7    those sort of things -- I don't really believe that they go

8    to the jury's ability to be fair and impartial.  I will

9    inquire generally if there's anything about this case or the

10   nature of the case that would affect their ability to be fair

11   and impartial.

12        I'll try to ask these questions that you've set out

13   here, both sides.  If there's a question that I haven't asked

14   that you want me to ask because you don't want it to be

15   attributed to your side, write the question out for me and

16   I'll ask it.

17        Are there any motions in limine?

18        MR. HALLSTEN:  Yes, your Honor.  You may have

19   noticed, your Honor, that the defendant didn't propose any

20   additional voir dire questions.  It's because the plaintiff's

21   list was all encompassing.

22        I just would like to point out that I think for

23   both parties, question No. 5 regarding whether or not

24   relatives have been employees of the county or a municipal

25   organization, would be one that I would ask the Court to ask.

1          THE COURT:  I will.

2          It's my standard voir dire to try to inquire if

3   there's any connection between any of the jurors and any of

4   the parties to this suit, the attorneys or any of the

5   witnesses.  I will be extremely comprehensive in that regard.

6          MR. HALLSTEN:  Yes, there are motions in limine,

7   your Honor.

8          THE COURT:  Okay.  So I have signed the final

9   pretrial order.

10         We'll take the defendants' because there's only

11  one.  What's your response to that, Mr. Casson?

12         MR. CASSON:  It's not the case, your Honor.  The

13  documents that were attached --

14         THE COURT:  Wait.  Their objection is, it's not

15  been alleged in the complaint.  You say it has been alleged

16  in the complaint?

17         MR. CASSON:  The way I'm reading it, it wasn't in

18  the EEOC charge and the complaint.

19         THE COURT:  (Reading:)  States as follows:  One, in

20  her complaint plaintiff has not alleged a failure to promote,

21  end quote.

22         MR. CASSON:  Our position is we have, in fact, done

23  that.

24         THE COURT:  Can you read that provision to me,

25  please?  I have the complaint in front of me.  Just tell me

1    the page and the allegation.

2              The parties have stipulated, have they not, that

3    the termination was an adverse employment action?

4              MR. CASSON:  Defendant has not stipulated to that.

5              THE COURT:  Okay.  Tell me what allegation raises

6    the failure to promote.

7              MR. CASSON:  28, your Honor.  It doesn't

8    specifically say failure to --

9              THE COURT:  Allegation 28 in Count 2 says, "The

10   actions of defendants as perpetrated by its agents and as

11   described and complained of above, are unlawful employment

12   practices in that they likely have the effect of

13   discriminating against, depriving and tending to deprive

14   equal employment to, and otherwise adversely affecting

15   plaintiffs because of their sex."

16             Where does it say failure to promote?

17             MR. CASSON:  Again, your Honor, it doesn't

18   specifically say.  It's a general allegation.

19             THE COURT:  Well, is there anything in the

20   preceding 26 paragraphs -- or 27 paragraphs that specifically

21   says failure to promote is grounds for recovery?

22             MR. CASSON:  It does not specifically say that,

23   your Honor.  We believe that because of the way the discovery

24   has evolved --

25             THE COURT:  That motion is granted.

1          There's also an assertion that this claim wasn't

2    made before the EEOC.

3          MR. CASSON:  That was -- we deny that, your Honor.

4          THE COURT:  Do you have a copy of the EEOC

5    complaint?

6          MR. CASSON:  Yes.

7          THE COURT:  Can you show that to me?

8       (Document tendered.)

9          THE COURT:  It says, quote, I have been subjected

10   to harassment and different terms and conditions based on my

11   sex, female, for a number of years.  In July of 2006 I became

12   acting director.  The different terms and conditions

13   continued from July 2006 through the date of my layoff, in

14   March 2007.  On March 3rd, 2007, I was notified that my

15   position was being eliminated.  On my last day of work,

16   March 16th -- my last day of work was March 16th.  I later

17   learned the position was filled by a male.  Other respondent

18   employees who were laid off were placed in alternate

19   positions.  I was the only laid-off employee that was not

20   placed in an alternate position, end quote.

21          When was this filed?

22          MR. CASSON:  I believe it was in March of 2007,

23   your Honor.

24          MR. HALLSTEN:  The first day of May, 2007.  It's on

25   the second page, your Honor.

1    THE COURT:  What's the limitation period for claims
2    before the EEOC?
3    MR. HALLSTEN:  300 days, your Honor.
4    THE COURT:  300 days.
5    This doesn't say anything about failure to be
6    promoted.
7    MR. CASSON:  There were two charges, your Honor,
8    two charge sheets.
9    THE COURT:  The second one talks about that?
10   MR. CASSON:  Yes.  It was on May 2nd.
11   THE COURT:  I have three pieces of paper here.
12   Where does it say -- where is the second charge?
13   MR. CASSON:  The second charge is --
14   THE COURT:  What did you say to me, Mr. Casson?
15   There's another charge here that I'm not reading?
16   MR. CASSON:  There were two charges incorporated on
17   the same number.
18   THE COURT:  Did I just read the entire charge?
19   MR. CASSON:  No.  There was a second -- there was a
20   second sheet of paper --
21   THE COURT:  Got it.  It says, see attached.
22   MR. CASSON:  And the bill of particulars -- there's
23   a statement of particulars --
24   THE COURT:  So it's the bill of particulars that
25   it's your theory contains the failure to promote?

1          MR. CASSON:  Yes.  That's what was sent to the

2     EEOC.

3          THE COURT:  Okay.  It says, I was hired on

4     June 27th, 1994.  Quote, my most recent position was acting

5     director of day reporting in the department of community

6     supervision and intervention.  I previously filed a charge of

7     discrimination against respondent.  I subsequently learned

8     that my position was filled by a male after being advised

9     that it was being eliminated, and the position of director

10    was also filled by a male after I submitted my resume for

11    consideration of that position.  I was terminated in favor of

12    males and retention and promotion.  Both the deputy director

13    and director positions were less qualified.

14          Trouble is, you didn't plead this in your

15    complaint.  I'm going to grant the motion.  It's clear the

16    theory you set out in your complaint is the termination, Mr.

17    Casson.

18          MR. CASSON:  Your Honor, we would move to amend the

19    complaint to conform with the proofs.

20          THE COURT:  There's no proofs yet.  We haven't

21    started any trial.

22          MR. CASSON:  We will have that evidence, your

23    Honor.

24          THE COURT:  That motion -- will there be an

25    objection to that?

1          MR. HALLSTEN:  To the amending --

2          THE COURT:  Here's the thing:  The defense is

3    objecting to any evidence, so as soon as you attempt to put

4    in any evidence -- I have granted the motion in limine.  That

5    motion will be -- the objection at trial will be granted and

6    you won't be able to put in any evidence.  So there will be

7    nothing to amend -- to conform -- there will be no proofs to

8    amend the pleadings to conform to.

9          MR. CASSON:  I understand that, your Honor.

10          What I want to advise the Court of, what I would

11    like to be able to do is simply secure the record, make the

12    proffer outside the hearing of the jury --

13          THE COURT:  That's already been done.  Federal Rule

14    of Evidence 103 doesn't require that any more.

15          103(2) says, in pertinent part, once the Court

16    makes a definitive ruling on the record admitting or

17    excluding evidence, either at or before trial, a party need

18    not renew an objection or offer of proof to preserve a claim

19    for error.

20          The pleadings do not plead a claim of

21    discrimination based on failure to promote.  Therefore, I am

22    granting the motion.

23          Motion in limine to bar the testimony of Edward

24    Healy and Zelda Whittler and Rosemarie Nolan.  Do you want to

25    respond to that, Counsel?

1    MR. HALLSTEN:  Yes, your Honor.

2    With regard to Zelda Whittler, the plaintiff did

3    attempt to notice her for a deposition.  It's very clear that

4    the plaintiff was aware of her as a witness.  We moved to

5    quash on several of the executive staff depositions but Mr.

6    Casson did not pursue the claim against Ms. Whittler; he only

7    pursued his claim against Mr. Townes and Mr. Dart.

8    Therefore, plaintiff had ample notice of Ms. Whittler's

9    identity as a witness.

10    Second, Ed Healy was the head of OPR at the time of

11    one of the investigations in this case.  In plaintiff's

12    exhibits that he has presented to this Court, Ed Healy's name

13    is listed as director at the top of the report.

14    And Mr. Casson, in fact, had conversations with my

15    colleague, Mr. Bowman, about possibly deposing Mr. Healy

16    during the course of the discovery and he decided not to

17    follow up on that.  So Mr. Casson had ample notice that Mr.

18    Healy was, in fact, a potential witness in this case.

19    And lastly, Rosemarie Nolan is listed on

20    Plaintiff's 26(a) as a potential witness.  We did answer in

21    our requests to admit that Ms. Nolan could testify regarding

22    the qualifications of the director of day reporting.  That

23    issue has been made slightly moot by the Court's ruling on

24    the defendants' motion in limine No. 1, that there's no

25    failure to promote allegation in this case.

1           And that -- I won't --

2           THE COURT:  Let's take Nolan first.  That will be

3    the easiest one.

4           Mr. Casson, you say the defendants have never

5    offered Ms. Nolan as a witness with knowledge of any subject

6    matter relevant to this matter.  The defendants have just

7    represented that Ms. Nolan was listed on your discovery and

8    the defendants answered that she was a person with knowledge.

9           MR. CASSON:  She was listed on my 26(a).  She was

10   -- they were listed on their 26(a) --

11          THE COURT:  They were listed -- stay with this.

12   They were listed on your 26(a) and they agreed she had

13   knowledge.  Now, what basis would you have for excluding her

14   as a witness?

15          MR. CASSON:  Because I don't know what -- for what

16   purpose she's being offered by the defendants.

17          THE COURT:  Did you attempt to depose her?

18          MR. CASSON:  I did.

19          THE COURT:  Well, do they have to tell you why they

20   are going to offer a witness?

21          MR. CASSON:  Your Honor, they cancelled the

22   depositions consistently across --

23          THE COURT:  Hold it.  One issue at a time, Mr.

24   Casson.

25          You just told me that you object to her being

1    called because you don't know what they are going to ask her.

2                   MR. CASSON:  Correct.

3                   THE COURT:  Is there a rule of discovery or rule of

4    evidence that requires they tell you in advance what they are

5    going to ask a witness before they are permitted to call a

6    witness?

7                   MR. CASSON:  No.  That's not my objection.

8                   THE COURT:  Then what's the next objection?

9                   MR. CASSON:  My objection is, they were not

10   disclosed in the 26(a) of defendant.

11                  THE COURT:  But you certainly were aware of her and

12   her qualifications because you listed her and they agreed

13   with you.  Now, wouldn't it be a needless act to have them

14   say the same thing back to you?

15                  MR. CASSON:  No, I don't think so.

16                  THE COURT:  Okay.  Is there any other basis?

17                  MR. CASSON:  Yes, your Honor.  On multiple

18   occasions I did, in fact, notice her for deposition.  They

19   were continuously cancelled by the defendants and --

20                  THE COURT:  Is that true, Counsel?

21                  MR. BOWMAN:  Your Honor, Jamieson Bowman, Assistant

22   State's Attorney.

23                  Ms. Nolan was noticed several times, but Mr. Casson

24   and I had conversations following the deposition of Alexis

25   Herrera, that he did not believe that she was necessary as a

1   witness following Ms. Herrera's testimony.

2          THE COURT:  Did you ever bring a motion to compel,

3   Mr. Casson, to produce her for deposition?

4          MR. CASSON:  No, I did not.

5          THE COURT:  Okay.  Then the motion is denied as to

6   Ms. Nolan.

7          Okay.  Defendants list both Edward Healy and Zelda

8   Whittler as trial witnesses.  Edward Healy is not, in fact,

9   listed as a person with knowledge in defendants' Rule 26(a)

10  disclosure.

11         Do you want to respond to that, Counsel?

12         MR. HALLSTEN:  Yes, your Honor.

13         To the extent that the defendants would be required

14  to identify every possible person that would rebut some claim

15  that plaintiff may or may not make -- the defendants claim

16  that they cannot identify those people.  However, with regard

17  to Mr. Healy, Mr. Healy's name is all over the documents,

18  he's the head of the person -- the organization that

19  investigated plaintiff in this case, and Mr. Casson and

20  Mr. Bowman had conversations on whether or not they would

21  notice up Mr. Healy for deposition.

22         Mr. --

23         THE COURT:  Do you want to speak to that, Mr.

24  Bowman?

25         MR. BOWMAN:  Yes, Judge.  We did have multiple

1    conversations regarding that.

2              More importantly, Mr. Healy's name had come up in

3    at least two depositions that Mr. Casson had taken.  He's a

4    rebuttal witness with regard to -- and I believe there are

5    going to be conversations by witnesses about things that he

6    may have said.

7              And so, Mr. Casson has been on notice on Mr. Healy

8    --

9              THE COURT:  Do you want to speak to that, Mr.

10   Casson?

11             MR. CASSON:  Your Honor, that, in fact, is not the

12   case.  His name had not come up as a substantive witness as

13   to any fact that's relevant in the case.

14             THE COURT:  If they produce transcript of a

15   deposition that belies that, Mr. Casson, I would be amenable

16   to a motion for sanctions.  Are you representing to me that

17   what he just said to me is absolutely false?

18             MR. CASSON:  No.  I'm saying there's another side

19   to the story, your Honor.

20             THE COURT:  That's not what you just said a moment

21   ago.

22             Would you read back -- while she's finding it,

23   we're off the record.

24        (Discussion had off the record.)

25        (Record read.)

1      THE COURT:  Will you produce for me from the

2  deposition, when you get time, something that you think

3  rebuts what he just said?

4      MR. CASSON:  Yes.

5      THE COURT:  I've been at this a long time.  Off the

6  record.

7      (Discussion had off the record.)

8      THE COURT:  Go ahead.

9      MR. CASSON:  Your Honor, I just want to make sure

10  that I'm clear with your Honor.

11      Mr. Healy's name has come up as a person in a

12  position, the director of internal affairs.  The

13  investigation that is at issue in this case was performed by

14  the Office of the Inspector General.  There was a referral

15  from internal affairs to the Office of the Inspector General.

16  That is the context in which his name has come up, not as

17  someone who performed an investigation or developed facts

18  relative to the investigation.

19      THE COURT:  Your statement is what it is, Mr.

20  Casson.

21      Tell me why under 26(a) he should not be permitted

22  to testify.

23      MR. CASSON:  Because he was not, in fact,

24  disclosed.

25      THE COURT:  Do you want to respond to that?

1      MR. HALLSTEN:  As plaintiff's counsel has explained

2  to you, he is well aware of Mr. Healy's involvement in this

3  case --

4      THE COURT:  Why don't you just give me a brief

5  written response, and you can put in there anything from the

6  transcript that you think fairly serves to put Mr. Casson on

7  notice.

8      MR. HALLSTEN:  Could we get those to you by

9  Thursday, your Honor?

10      THE COURT:  You can get it to me before trial.

11  We'll make a decision at the time.

12      MR. HALLSTEN:  Thank you.

13      THE COURT:  Okay.  Zelda Whittler is likewise not

14  listed as a person with knowledge under Rule 26 disclosures

15  or interrogatories.

16      MR. HALLSTEN:  Your Honor, in a similar fashion,

17  plaintiff was well aware that Ms. Whittler may have knowledge

18  of this case and attempted to take her deposition.

19  Defendants moved to quash the executive staff depositions in

20  this matter.

21      Mr. Casson only moved forward on -- let me -- as

22  the plaintiff noticed up the depositions of Sheriff Dart,

23  Brian Townes, Zelda Whittler, the defendants moved

24  collectively to quash the depositions of the executive staff.

25      Plaintiff moved forward with his motion and this

1    Court granted plaintiff the opportunity to serve special

2    interrogatories on Sheriff Dart --

3              THE COURT:  Were those served?

4              MR. HALLSTEN:  Yes.

5              THE COURT:  Was Ms. Whittler also the subject of

6    special interrogatories?

7              MR. HALLSTEN:  Mr. Casson did not move forward with

8    the -- did not move forward to submit -- did not seek leave

9    of this Court to submit Ms. Whittler with interrogatories.

10             THE COURT:  Mr. Casson?

11             MR. CASSON:  I was only -- I was granted leave to

12   file -- or, actually, not to file but to serve two

13   interrogatories -- or two sets, one to Mr. Townes and one to

14   Mr. Dart, and that was it.

15             THE COURT:  He said you didn't ask to serve

16   interrogatories on Ms. Whittler.

17             MR. CASSON:  I asked to take all of the

18   depositions.  Your Honor granted me leave to -- one of their

19   requests for relief was they wanted, in lieu of the

20   depositions, to do the interrogatories.

21             THE COURT:  Did you ask to submit interrogatories

22   to Ms. Whittler?

23             MR. CASSON:  No, not interrogatories.

24             THE COURT:  Okay.  You will put that in writing as

25   well.

1          Plaintiff's motion in limine No. 2, to bar

2     examination of witnesses that calls for speculation, guess or

3     conjecture.  I will deny that without prejudice for you to

4     raise it at the time of trial if you think a question fairly

5     calls for an answer that is not based on personal knowledge

6     of the witness or seeks to elicit an impermissible opinion

7     from a witness.

8          Plaintiff's motion in limine No. 3, to bar

9     introduction of documents not tendered in discovery.  What do

10    you say to that?

11         MR. HALLSTEN:  Well, your Honor, I don't know what

12    to say.  The documents -- the motion doesn't identify --

13         MR. BOWMAN:  Your Honor, I'm not quite sure what

14    Mr. Casson is specifically referring to as well.  We pretty

15    comprehensively went through and Bates stamped almost every

16    single document that we tendered.  There are maybe two or

17    three documents that have not been Bates stamped; I believe

18    that they have been discussed in discovery.  But I'm not sure

19    if that's what Mr. Casson is referring to.

20         THE COURT:  Mr. Casson, I'll deny the motion

21    without prejudice for you to raise at the time of trial an

22    objection to any document you think is barred because it

23    wasn't produced in discovery.  Fair enough?

24         MR. CASSON:  Fair enough, your Honor.

25         THE COURT:  Okay.  Anything else that we should

1    spread of record?

2              MR. CASSON:  My No. 4, your Honor --

3              THE COURT:  I don't have a 4.  Do I have a 4?

4              MR. HALLSTEN:  It appears to be the same -- it

5    appears to be Mr. Casson's motion to quash and motion to show

6    cause converted into a motion in limine.  I believe the Court

7    has already addressed this.

8              THE COURT:  I see it -- no, I don't -- I've got 1,

9    2 and 3.  I don't have a 4.

10             MR. CASSON:  Let me see if I have another copy,

11   your Honor.

12        (Brief pause.)

13        (Document tendered.)

14             THE COURT:  Thank you.

15             You say in Paragraph 1 that the Court did not state

16   a date on which the interrogatories must be answered.  Then

17   in Paragraph 7 you say that May 19th was the agreed upon

18   compliance date and that was ignored.

19             According to your own pleadings, Mr. Casson, there

20   was no order in effect that required production on May 19th.

21             MR. CASSON:  That's correct, your Honor.  I think

22   that's moot as to those interrogatories.

23             THE COURT:  Well, in any event, there's no order in

24   effect.  There was no order in effect.  It was an agreement

25   that you had with the parties.  It certainly wouldn't support

1    a contempt or a motion to compel.  In fact, that material has

2    all been produced, has it not?

3              MR. HALLSTEN:  Correct.

4              THE COURT:  So this is denied as moot.

5              MR. CASSON:  Your Honor, there are two more parts

6    to that request.  There were -- which we moved to compel on

7    the request for production of documents that were not, in

8    fact, produced.  They specifically relate to the --

9              THE COURT:  Tell me what paragraph you're talking

10   about.

11             MR. CASSON:  Unfortunately, I don't have a second

12   copy --

13        (Brief pause.)

14             MR. CASSON:  Starting on Paragraphs 15, 16, 17.

15             THE COURT:  Well, Paragraph 14 says the plaintiffs

16   are entitled to rely on a party's good faith compliance with

17   the order of court.  There was no order.

18             MR. CASSON:  Yes, that's correct.

19             THE COURT:  Okay.  So that theory is gone.

20             Why would there be a sanction for their conduct

21   that was not violative of a court order?

22             MR. CASSON:  We're asking -- there should be, your

23   Honor, because at -- we've asked for -- we've been told that,

24   in fact, we would get a response.  They were issued -- the

25   third and fourth requests for production were issued at the

1  same time --

2  　　　　THE COURT:  Rule 37 permits me, in the appropriate

3  circumstance, to enter orders because of -- abuse of

4  discovery orders, does it not?

5  　　　　MR. CASSON:  It does.

6  　　　　THE COURT:  There was no order regarding the

7  compliance time.

8  　　　　MR. CASSON:  That's correct, your Honor.  When we

9  brought -- we brought the motion to compel, and technically I

10  guess it's still pending but --

11  　　　　THE COURT:  I have denied that.

12  　　　　MR. CASSON:  Okay.

13  　　　　THE COURT:  But you recite that you had an

14  agreement that these would be produced on the 19th and that

15  he violated the agreement.

16  　　　　MR. CASSON:  Correct.

17  　　　　THE COURT:  Well, I don't have the authority to

18  sanction the parties' private agreements and their

19  violations.  It wasn't embodied in a court order.  Plus the

20  fact that you had it two days later.

21  　　　　When was the agreement?  When were you to produce

22  those?

23  　　　　MR. HALLSTEN:  May 19th.  We put them in the mail

24  May 19th and the plaintiff has represented that she got those

25  on the 21st.  I have no reason to dispute that

1    representation.

2              THE COURT:  Do you recall an agreement that you

3    would physically produce those on the 19th?

4              MR. HALLSTEN:  No.  We did not make any specifics

5    -- a specific detailed agreement.

6              MR. CASSON:  Your Honor, that's not the issue here.

7    The issue is --

8              THE COURT:  What are you seeking to have me do and

9    what's the basis for my authority to do it?

10             MR. CASSON:  Specifically the documents that are in

11   the request for production.  They were never tendered on the

12   19th.

13             THE COURT:  Is this the documents that I ordered

14   produced on May 4th?

15             MR. HALLSTEN:  Yes.

16             THE COURT:  There wasn't a time for them to be

17   produced ordered, Mr. Casson, by your own pleadings here.

18             MR. CASSON:  They were issued pursuant -- I

19   understand there was no court order.

20             THE COURT:  The motion is denied.

21             MR. HALLSTEN:  Your Honor, at this time plaintiff

22   has listed on her may call witnesses Brian Townes and Sheriff

23   Dart.  We had prepared something in writing.  At this time

24   the defendants would move to exclude those two persons as

25   witnesses.

1    The answers to interrogatories that were provided

2    demonstrate that they don't have any applicable knowledge in

3    this case.  Their answers to interrogatories are free to be

4    used as exhibits, if necessary.

5         THE COURT:  Mr. Casson?

6         MR. CASSON:  I intend to call them to support those

7    -- I certainly cannot use the interrogatory.

8         THE COURT:  Off the record.

9      (Discussion had off the record.)

10        THE COURT:  Anything further?

11     (No response.)

12        THE COURT:  Okay.

13     (Which were all the proceedings heard.)

14                    CERTIFICATE

15     I certify that the foregoing is a correct transcript

16    from the record of proceedings in the above-entitled matter.

17

18     /s/ *Mary M. Hacker*                    *June 2, 2010*

19    _____        _____

20    Mary M. Hacker                  Date
      Official Court Reporter

21

22

23

24

25