UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KIMBERLY PASSANANTI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 08-cv-2803 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| THE COUNTY OF COOK, ILLINOIS; | ) | |
| COOK COUNTY SHERIFF'S | ) | |
| DEPARTMENT; and | ) | |
| JOHN P. SULLIVAN, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kimberly Passananti, brought this action against Cook County; the Cook County Sheriff's Office; and John P. Sullivan, a former employee of that office, alleging sex discrimination and harassment under Title VII of the Civil Rights Act of 1964 and a violation of her right to equal protection under the Fourteenth Amendment and 42 U.S.C. § 1983. The case was tried before a jury from June 7, 2010, to June 9, 2010. At the close of their case in chief, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The Court took the motion under advisement and submitted the case to the jury.

On June 10, 2010, the jury returned a verdict for Plaintiff on all counts. The Court withheld entry of the verdict, pending resolution of Defendants' Rule 50(a) motion. Defendants then filed a renewed motion for judgment as a matter of law, pursuant to Rule 50(b). That motion is now fully briefed and ripe for ruling.

## BACKGROUND

*EEOC Charge*

On May 1, 2007, Plaintiff filed a Charge of Discrimination with the Illinois Department of Human Rights and the Equal Employment Opportunity Commission ("EEOC").[1] In that charge, she alleged that the Cook County Sheriff's Department discriminated against her on the basis of her sex between December 1, 2006, and March 3, 2007, stating the particulars as follows:

> I was hired by Respondent on June 27, 1994. My most recent position was Acting Director of Day Reporting in the Department of Community Supervision & Intervention. I have been subjected to harassment and different terms and conditions based on my sex, female, for a number of years. In July, 2006, I became the Acting Director. The differing terms and conditions continued from July, 2006, through the date of my layoff in March, 2007. On March 3, 2007 I was notified that my position was being eliminated. My last day of work was March 16, 2007. I later learned that the position was filled by a male. Other Respondent employees who were laid off were place [*sic*] in alternate positions. I was the only laid off employee who was not placed in an alternate position.

> I believe that I have been discriminated against because of my sex, female, in violation of Title VII of the Civil Rights Act of 1964, as amended.

Ex. Plaintiff's EEOC Charge 5-1-07.

---

[1] There is some dispute as to the exact date Plaintiff filed her EEOC charge. During the trial, both parties stated that the charge was dated May 1, 2007. In their reply brief in support of their Rule 50(b) motion, however, Defendants note – for the first time – that the exhibit was not signed or stamped by the EEOC. Defendants have now produced a copy of an EEOC charge that is stamped by the EEOC; the stamp bears a date of May 14, 2007. At any rate, this two-week discrepancy does not materially affect resolution of the relevant issues.

On September 28, 2007, Plaintiff received a notice of her right to sue. She instituted the instant action on May 14, 2008.[2]

## Complaint

There are three counts in Plaintiff's Complaint: Count I claims a right to statutory indemnification against Cook County; Count II is a Title VII claim for sexual discrimination and harassment against Cook County and the Sheriff's Office only; and Count III is a § 1983, equal-protection claim against all Defendants.

Plaintiff based her claims on the following allegations: She was hired by the Sheriff's Office in 1994 and worked there for thirteen years. In 2003, she was promoted to Deputy Director of the Day Reporting Center. In March 2007, she was terminated. Plaintiff alleged that she was falsely told her position was eliminated and that she was later replaced by a male.

Plaintiff also claimed that her supervisor, Defendant Sullivan, referred to her as a bitch on numerous occasions; that he transferred, disciplined, and suspended her without cause; and that he falsely and maliciously accused her of criminal and official misconduct by stating that she had sexual relations with an inmate she supervised. Plaintiff also claimed that Defendants' actions reflect a systematic policy and practice of discrimination and retaliation.

---

[2] Plaintiff originally filed suit in state court, but the matter was dismissed. On July 14, 2008, Defendants filed a motion to dismiss Plaintiff's complaint on the grounds that more than 90 days had passed since she received her "Notice of Right to Sue" from the EEOC. Plaintiff responded by arguing that her claims were tolled in state court, and Defendants voluntarily withdrew their motion.

In Count II, Plaintiff referred to the aforementioned allegations and stated that they "are unlawful employment practices in that they likely have the effect of discriminating against, depriving and tending to deprive equal employment to, and otherwise adversely affecting Plaintiffs [*sic*] because of their [*sic*] sex in violation of 775 ILCS 5/2-102 and Title VII of the Civil Rights Act of 1964." Compl. ¶ 28. Plaintiff also claimed that Defendants engaged in a "policy, pattern, and practice of sexual harassment and discrimination against women" and "intentionally subjected Plaintiff to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions of Plaintiff's employment and by knowingly failing and refusing to protect Plaintiffs [*sic*] from those hostile and abusive conditions." Compl. ¶¶ 29-30. Plaintiff sought compensatory damages for, among other things, great mental anguish and lost wages.

In Count III, Plaintiff claimed that all Defendants "intentionally subjected [her] to unequal and discriminatory treatment by creating a hostile and abusive work environment that altered the conditions of [her] employment and by knowingly failing and refusing to protect [her], and other women, from those hostile and abusive conditions." Compl. ¶ 34. Plaintiff also claimed she "was required to tolerate and endure Defendant' [*sic*] sexual advances." Compl. ¶ 35. Again, Plaintiff alleged that Defendants' actions reflect a "policy, custom, or pattern of official conduct of engaging in and condoning sexual harassment of women." Compl. ¶ 36. Plaintiff asserted that Defendants' actions constitute a violation of her right to equal protection under 775 ILCS 5/2-102, the

Fourteenth Amendment, and § 1983. She also claimed that Defendants' actions were willful and malicious.

There is substantial overlap between Plaintiff's boilerplate recitations in Counts II and III. The primary distinction between the two claims is between the Defendants against whom each claim is asserted and the legal bases for the relief sought. In particular, John Sullivan is not named as a Defendant in Count II. Count III is against all Defendants.

*Trial*

Plaintiff testified on her own behalf at trial. She discussed the history of her work at the Day Reporting Center, a unit within the Sheriff's Office's Department of Community Supervision and Intervention ("DCSI"). Most of Plaintiff's testimony pertained to the negative treatment she endured from her supervisor, Defendant Sullivan. She also testified that Sullivan left the Sheriff's Office in July 2006 due to health problems and never returned. Trial Tr. 110. Plaintiff did not testify about her termination, other than to say that she was fired in 2007 and that losing her job was difficult for her. Trial Tr. 18, 57, 111.

Plaintiff called several other witnesses to corroborate her harassment allegations. She also called Anthony Boyle, who testified that he assumed many of Plaintiff's responsibilities after she was terminated but that he did not receive a promotion in terms of title or pay. Trial Tr. 202.

Defendants called three witnesses. Richard LaBrie testified that he has served as the Director of the Day Reporting Center since March 2007, that Boyle was the acting

5

director until he (LaBrie) assumed that position, and that he sometimes referred to Boyle as a "deputy director" or "assistant director," notwithstanding the fact that this was not Boyle's actual title. Trial Tr. 235-36. Defendants also called Alexis Herrera, Chief Financial Officer for the Cook County Sheriff's Office, who testified that Plaintiff's position was eliminated in 2007, along with numerous others, as a result of county-wide budget cuts. Trial Tr. 250-64. Lastly, Defendants called Sullivan, who denied harassing Plaintiff. Trial Tr. 352. Sullivan also testified that he left his position after he suffered a stroke on July 6, 2006, and that he had no role in Plaintiff's termination. Trial Tr. 351-58.

### Jury Instructions and Verdict Form

The parties' agreed upon a verdict form, which lists three claims: (1) a Title VII, sexual-discrimination claim against the Sheriff's Office; (2) a § 1983, equal-protection, sexual-discrimination claim against Sullivan; and (3) a § 1983, equal-protection, sexual-discrimination claim against the Sheriff's Office.

The agreed jury instructions, however, presented the jury with charges for *four* claims and offered little indication as to how each charge correlated with the blanks on the verdict form. The first charge addressed Plaintiff's claim that she was reassigned and then terminated because of her gender. The jury was instructed that it must find for Plaintiff if she proved that claim by a preponderance of the evidence and for Defendants if she did not.

The second charge instructed the jury to find for the Plaintiff if she proved that the Sheriff's Office had a pattern or practice of discriminating and if the Sheriff's Office

6

failed to prove that it would have reassigned or terminated her even if it had not made a regular practice of gender discrimination.

The third charge stated that the jury could find for Plaintiff if she was sexually harassed by Sullivan without suffering a tangible employment action. To succeed on that claim, Plaintiff had to show: (1) that Sullivan was her supervisor, (2) that she was subjected to sexual harassment, (3) that the conduct was unwelcome, (4) that the conduct occurred because she is a female, (5) that the conduct was sufficiently severe or pervasive that a reasonable person in her position would find her work environment to be hostile or abusive, and (6) that she subjectively believed the conduct made her work environment hostile or abusive. If the jury found that Plaintiff proved those things, it then had to determine whether the Sheriff proved (1) that it exercised reasonable care to prevent and correct any harassing conduct in the workplace and (2) that Plaintiff unreasonably failed to take advantage of opportunities provided by Defendant to prevent or correct harassment or otherwise avoid harm.

The fourth charge instructed the jury on the elements necessary to establish a § 1983 claim against Sullivan.

On the second day of deliberations, the Court received a note signed by two jurors. It read as follows:

> One, is it possible to get some direction as to how much money could be given for compensatory damages if we were to find for the plaintiff?
>
> Two, can compensatory damages be awarded for discrimination in the workplace, but nothing to be awarded if we find that her termination was due to budget cuts rather than discrimination?

Trial Tr. 443.

After discussing the matter with counsel for Plaintiff and Defendants, the Court, with their agreement, responded to the second question as follows:

> I instruct you as follows: The plaintiff claims she was terminated by the defendant because of her gender. To succeed on this claim, plaintiff must prove by a preponderance of the evidence that she was terminated by the defendant because of her gender. To determine that plaintiff was terminated because of her gender, you must decide that defendant would not have been terminated – let me say that again. You must decide that defendant would not have terminated plaintiff had she been a male but everything else been the same. If you find that plaintiff has proved this by a preponderance of the evidence, you must find for plaintiff. However, if you find the plaintiff did not prove this by a preponderance of the evidence in that her termination by the defendant was due to a budget reduction by the Cook County Sheriff's Office, then you must find for the defendants.

Trial Tr. 450.

After further deliberation, the jury returned a verdict for Plaintiff on all counts. The jury awarded $4 million in compensatory damages against the Sheriff's Office, $70,000 in compensatory damages against Sullivan, and $30,000 in punitive damages against Sullivan.

## LEGAL STANDARD

Federal Rule of Civil Procedure 50(a) provides that a party can move for judgment as a matter of law at any time before the case is submitted to the jury. Fed. R. Civ. P. 50(a)(2). If the court does not grant such a motion, "the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." Fed. R. Civ. P. 50(b). The moving party can then renew its motion for judgment as a matter of law. *Id.*

The Court's inquiry regarding a motion for judgment as a matter of law is to determine "whether the evidence presented, combined with all reasonable inferences permissibly drawn therefrom, is sufficient to support the verdict when viewed in the light most favorable to the party against whom the motion is directed. In other words, [this Court is] limited to assessing whether no rational jury could have found for the plaintiff." *Emmel v. Coca-Cola Bottling Co. of Chicago*, 95 F.3d 627, 629-30 (7th Cir. 1996) (citations and internal quotation marks omitted)). Under Rule 50(b), "the question is not whether the jury believed the right people, but only whether it was presented with a legally sufficient amount of evidence from which it could reasonably derive its verdict." *Massey v. Blue Cross-Blue Shield of Ill.*, 226 F.3d 922, 924 (7th Cir. 2000). A "mere scintilla" of evidence, however, is not enough. *Id.* The standard is fundamentally the same as the standard for summary judgment. *Id.*

## ANALYSIS

Plaintiff contends that the jury was presented with "two distinct claims": one "based on gender discrimination in violation of Title VII of the Civil Rights Act" and one "based on a violation of the Equal Protection Clause and brought under 42 U.S.C. § 1983." Pl. Opp'n Br. 3. As discussed above, the purported distinction is not so clear. Nonetheless, Defendants apparently agree with Plaintiff's characterization, for they have framed their Motion in terms of a Title VII claim for hostile work environment and a § 1983 claim for discriminatory termination.

*Title VII*

Defendants first argue that Plaintiff's Title VII, hostile-work-environment claim is barred by the applicable statute of limitations and beyond the scope of Plaintiff's EEOC charge. For an EEOC charge to be timely in Illinois, it must be filed within 300 days of the discriminatory act. 42 U.S.C. § 2000e-5(e)(1). *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). Plaintiff filed her charge with the EEOC on May 1, 2007. Thus, any acts occurring prior to July 5, 2006, should be outside the statute of limitations; and a timely objection should have removed all of the harassing conduct from the jury's consideration.[3] The evidence showed that most – if not all – of the purportedly harassing conduct occurred in 2005 and that Sullivan – the only person claimed by Plaintiff to have harassed her – permanently left the workplace due to a medical condition around July 6, 2006. There was no evidence that Plaintiff was harassed at any time after Sullivan left.

The problem, however, is that Defendants waived their right to assert a statute-of-limitations defense. Plaintiff filed her Complaint on May 1, 2008. Not only did Plaintiff name Sullivan as a defendant, she specifically alleged that Sullivan transferred, disciplined, and suspended her without cause; that he falsely and maliciously accused her of sleeping with an inmate she supervised; and that he called her a bitch on numerous occasions.

---

[3] As discussed above, there is some question as to whether Plaintiff actually filed her EEOC charge on May 1, 2007. If she did not actually file it until May 14, 2007, then July 18, 2006, would be the cut-off date under the relevant statute of limitations.

Knowing that Sullivan had not worked with Plaintiff since July 2006, Defendants could have immediately moved to dismiss all Title VII claims that were based on Sullivan's actions. They did not. Although they filed a motion to dismiss on July 14, 2008, they did not assert that any of Plaintiff's claims are barred by the late filing of her EEOC charge. Nor did Defendants raise the issue in their Answer, which asserts sovereign immunity as their only affirmative defense.

Indeed, the issue did not come up until almost two years after Plaintiff filed her Complaint. On May 4, 2010, Defendants presented a motion to amend/correct their Answer and a motion for leave to file a belated motion for summary judgment. These motions came over two months after the date set for filing dispositive motions and less than five weeks before trial. Both motions were denied. With regard to Defendants' request to amend their Answer, the Court ruled that "Defendants failed to demonstrate that their late amendment was not the product of undue delay or that Plaintiff would not be unfairly prejudiced if Defendants were allowed to assert additional affirmative defenses this close to trial." Docket No. 55.

Defendants did not seek reconsideration of that decision, and their subsequent conduct shows they abandoned any effort to bar evidence of harassing conduct that occurred prior to what should have been the relevant period of time. The joint pretrial order submitted before the pretrial conference contained no objection to the admission of any evidence regarding Sullivan's actions before July 5, 2006. Nor did Defendants make any such objections in their motions *in limine* or at trial. Indeed, during a sidebar

conversation at trial, Defendants' counsel expressly recognized that Plaintiff was actively pursuing her Title VII claim at trial. *See* Trial Tr. 31:4-16.

"In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense, including: . . . statute of limitations." Fed. R. Civ. P. 8(c)(1). Generally, failure to plead a defense results in its waiver. *Pinto Trucking Serv., Inc. v. Motor Dispatch, Inc.*, 649 F.2d 530, 534 (7th Cir. 1981); *see also Johnson v. Sullivan*, 922 F.2d 346, 355 (7th Cir. 1990) (holding that failure to raise the statute-of-limitations defense in answer constituted waiver). Here, Defendants waited too long to assert a statute-of-limitations defense and made no effort to pursue the defense at trial. Defendants' arguments in their motion for judgment as a matter of law come too late. The defense has been waived.

Defendants similarly waived any argument that a hostile-work-environment claim is beyond the scope of Plaintiff's EEOC charge. Citing *Cheek v. Peabody Coal Co.*, 97 F.3d 200, 202-03 (7th Cir. 1996), and *Conner v. Illinois Department of Natural Resources*, 413 F.3d 675, 680 (7th Cir. 2005), Defendants attempt to circumvent the issue of waiver by asserting that the scope of an EEOC charge is jurisdictional, such that the Court never had jurisdiction over claims not contained in Plaintiff's EEOC charge. Although the cases cited by Defendants do hold that claims are properly dismissed if they exceed the scope of an EEOC charge, they do not state that scope is a jurisdictional issue. Indeed, the Seventh Circuit has expressly held that it is *not* a jurisdictional requirement. *See Volovsek v. Wisc. Dep't of Agr., Trade & Consumer Protection*, 344 F.3d 680, 687 (7th Cir. 2003) ("But the requirement that a plaintiff exhaust her administrative remedies

by the filing of a timely EEOC complaint containing charges whose scope covers the claims in a subsequent district court complaint is merely a condition precedent to suit, not a jurisdictional requirement. Therefore, the timing and scope requirements of an EEOC filing are subject to various equitable doctrines – most significantly in the present case, waiver.") (citations omitted).

Like their statute-of-limitations defense, Defendants did not make a timely assertion that Plaintiff's hostile-work-environment claim exceeded the scope of her EEOC charge. Accordingly, that defense has also been waived.

Defendants also assert that, even if those defenses were waived, the evidence was insufficient to support Plaintiff's claim of a hostile work environment. As discussed above, in order to prove her case, Plaintiff had to show that "she was 1) subjected to unwelcome sexual conduct, advances, or requests; 2) because of her sex; 3) that were severe or pervasive enough to create a hostile work environment; and 4) that there is a basis for employer liability." *Erickson v. Wisc. Dep't of Corr.*, 469 F.3d 600, 604 (7th Cir. 2002) (citations omitted). To be actionable under Title VII, harassment must result in a workplace that is both objectively and subjectively hostile. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993).

At trial, Plaintiff presented the following evidence of harassment: Sullivan was "very demeaning" and "constantly used the B word." Trial Tr. 28. He called Plaintiff a bitch on "numerous" occasions "over a progressive period of time." Trial Tr. 28. When asked if Sullivan referred to her in any other manner, Plaintiff said, "Well, he would call me stupid. He would tell me to shut the F up, very degrading and demoralizing." Trial

13

Tr. 28. Plaintiff also testified that she had an altercation with Sullivan in his office in 2005, during which Sullivan accused her of having sex with an inmate and threatened to get her suspended. Trial Tr. 33. He also once said, "Shut the F up, you lying B." Trial Tr. 33. Plaintiff further testified that Sullivan twice threatened to have her fired. Trial Tr. 50. She also said that he "pretty much ostracized" her by prohibiting her from having direct conversations with the investigators who worked below her, which it made it hard for her to do her job. Trial Tr. 50-51. (Plaintiff provided no further details as to this conclusion; nor did she provide any specific instances of this conduct by Sullivan.)

Plaintiff also presented testimony of investigators at the Day Reporting Center. Shaun Roberts testified that he heard an altercation between Sullivan and Plaintiff during which Sullivan called Plaintiff "an F'ing liar." Trial Tr. 190-91. Sally Guide-Campillo testified that she heard Sullivan say to Plaintiff, "Shut the F up, you lying bitch." Trial Tr. 300. Guide-Campillo also testified that, in April 2006, she left Plaintiff's office as Sullivan entered and heard him say, "What is that F'n bitch doing in here this time?" Trial Tr. 304.

Sullivan testified that he never called Plaintiff a bitch or used the F word in her presence and denied ever saying that she slept with an inmate. Trial Tr. 352-357. For purposes of this Motion, however, it must be assumed that the jury believed Plaintiff (and others) over Sullivan. The Court does not make credibility determinations; nor will the Court supplant the jury's verdict with its own.

Nonetheless, even when all of the evidence is considered in the light most favorable to Plaintiff, Plaintiff failed to prove that she was subjected to unwelcome sexual conduct because of her sex that was severe or pervasive enough to create a hostile work environment.

A hostile-work-environment claim need not be based on verbal or physical conduct of a sexual nature; it can also be based on "conduct demonstrating an 'anti-female animus' . . . . In other words, a plaintiff can proceed on a claim when the work environment is hostile because it is 'sexist rather than sexual.'" *Scruggs v. Garst Seed Co.*, 587 F.3d 832, 840 (7th Cir. 2009) (*Scruggs*) (quoting *Boumehdi v. Plastag Holdings, Inc.*, 489 F.3d 781, 788 (7th Cir. 2007) (*Boumehdi*)). But the mere fact that a defendant used a pejorative term that is more likely to be directed toward a female than a male does not alone establish unwelcome sexual conduct:

> It is true that "bitch" is rarely used of heterosexual males (though some heterosexual male teenagers have taken recently to calling each other "bitch"). But it does not necessarily connote some specific female characteristic, whether true, false, or stereotypical; it does not draw attention to the woman's sexual or maternal characteristics or to other respects in which women might be thought to be inferior to men in the workplace, or unworthy of equal dignity and respect. In its normal usage, it is simply a pejorative term for "woman."

*Galloway v. Gen. Motors Serv. Parts Operations*, 78 F.3d 1164, 1167-68 (7th Cir. 1996), *overruled on other grounds Nat'l RR Passenger Corp. v. Morgan*, 536 U.S. 101 (2002); *see also Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998) ("We have never held that workplace harassment, even harassment between men and women, is automatically discrimination because of sex merely because the words used have sexual content or connotations. 'The critical issue, Title VII's text indicates, is whether

members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed.'") (quoting *Harris v. Foklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg, J., concurring)).

Plaintiff proved that Sullivan made vulgar, rude, and ungentlemanly statements. She proved there were incidents in which he called her names and made it difficult for her to work. However, the evidence is insufficient for a rational jury to conclude that Sullivan's sometimes-vulgar conduct was directed at Plaintiff because she is a woman and that it was so severe or pervasive that it rendered her work environment hostile as a matter of law. *Compare Boumehdi*, 489 F.3d at 786, 789 (holding environment was objectively hostile when supervisor made at least eighteen sex-based comments to plaintiff, such as saying women do not belong in the pressroom, women should wear low-cut blouses, cleaning was a task for women, and plaintiff looked like she received a breast augmentation), *with Scruggs*, 587 F.3d at 840-41 (holding that supervisor's sporadic comments – including saying plaintiff was "made for the back seat of a car" and looked like a "dyke" – did not rise to the level of a hostile work environment).

Furthermore, the evidence showed that Plaintiff failed to take advantage of reasonable preventive or corrective measures regarding any perceived harassment. When no tangible employment action is taken against the employee in the course of the harassment, an employer may raise an affirmative defense to liability. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) (*Ellerth*). To prevail on this "*Ellerth* defense," an employer must show by a preponderance of the evidence that (1) it took reasonable measures to prevent and promptly correct any sexually harassing behavior, and (2) the

16

plaintiff unreasonably failed to take advantage of preventive or corrective opportunities or to avoid harm otherwise. *Id.* The jury was specifically instructed on the elements of this defense. *See* Trial Tr. 428-29.

In this case, Plaintiff testified that the Sheriff's General Orders provide procedures through which an employee should address complaints of sexual harassment. Trial Tr. 69. Employees were provided up to one year in which to make a claim. *Id.* The General Orders provide that, if an employee's supervisor harasses her, she should bring the matter to the attention of the next person up the chain of command. Trial Tr. 69-70. The General Orders also provide that an employee should use a standard complaint form. Trial Tr. 70.

Plaintiff also testified that she actually instructed cadets on these procedures for making a complaint of sexual discrimination that are set forth in the Sheriff's General Orders and admitted that she knew of no one else who was more knowledgeable than she about the Sheriff's policy, practices, and procedures relating to sexual harassment, gender discrimination, and retaliation. Trial Tr. 64-70. Despite this apparent expertise, Plaintiff admitted that she did not follow proper procedures for asserting her grievances. Instead, she chose to discuss some of Sullivan's conduct with the Executive Director of the Cook County Sheriff Training Institute and to write a letter on August 17, 2005, to the Sheriff's Office's outside counsel. Plaintiff admitted at trial that her letter, which was admitted into evidence, did not contain a request for any type of investigation into Sullivan's conduct and that she made no separate request for any remedial action.

"[A]n employer cannot be expected to correct harassment unless the employee makes a concerted effort to inform the employer that a problem exists." *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 813 (7th Cir. 1999) (citation and internal quotation marks omitted). Furthermore, "one complaint to management about one incident is not sufficient [to put a defendant] on notice that [plaintiff] was experiencing widespread and persistent harassment." *Silk v. City of Chicago*, 194 F.3d 788, 807 (7th Cir. 1999). This is particularly true in this case, where there is no evidence that Plaintiff made any effort to notify management of any perceived harassment between August 17, 2005, when she wrote the letter to Gallagher, and July 2006, when Sullivan left the Day Reporting Center for health reasons. As a matter of law, Plaintiff's letter to outside counsel and her isolated comment to a person (whose supervisory authority was not made clear at trial) were insufficient to put the Sheriff's Office on notice of Sullivan's alleged harassment. Plaintiff unreasonably failed to take advantage of the procedures she indisputably knew were in place.

Accordingly, judgment must be entered in favor of Defendants on Plaintiff's Title VII, hostile-work-environment claim.

### Section 1983

Plaintiff's equal-protection claim did not take shape until trial when Plaintiff's counsel clarified that it is based on her termination:

THE COURT: And what are you pleading in 1983?

MR. CASSON: Equal protection.

THE COURT: In what regard? What was the gravamen of the denial of equal protection?

MR. CASSON: Gender discrimination.

THE COURT: In what specific regard?

MR. CASSON: In terms of her reassignment –

THE COURT: Her termination?

MR. CASSON: Her termination.

THE COURT: And this somehow goes to that?

MR. CASSON: Yes. I think this goes to the – how that -- how women were treated in that unit.

THE COURT: But your theory is that she was discriminated against by being terminated.

MR. CASSON: Yes.

Trial Tr. 227. In their briefs associated with the instant Motion, the parties agree that to prevail on her equal-protection claim, Plaintiff had to prove that she was terminated because of her gender.

Based on the evidence presented at trial, no rational jury could find that Plaintiff was terminated because she is a woman. Alexis Herrera, the Chief Financial Officer for the Cook County Sheriff's Office, testified that Plaintiff's position was eliminated, along with 43 others, as a result of county-wide budget cuts. Indeed, she testified that the Sheriff's Office requested full funding for DCSI – including funding for Plaintiff's position – for the 2007 fiscal year. Trial Tr. 256-57. When the president of the Cook County Board indicated that the Sheriff would have to accept a smaller budget, Herrera recommended elimination of certain community programs in an effort to reduce the Sheriff's budget without having an impact on the jail population. Trial Tr. 258-59. Even then, no cuts were recommended in Plaintiff's department.

19

However, when the announced program cuts led to public outcry regarding the elimination of these other programs, the County reconsidered its decisions; and Herrera was tasked with finding other ways of trimming the budget without affecting the jail population. Trial Tr. 260-61. Her amended budget proposed cutting personnel in several areas, including police officers, janitors, and Day Reporting Center personnel. Trial Tr. 261. In total, Herrera recommended cutting 44 positions in DCSI, including Plaintiff's. Trial Tr. 263-64. Herrera made these recommendations without communicating with anyone in the Sheriff's Office. Trial Tr. 264. She did not consider gender in making her decisions, and no one instructed her to cut Plaintiff's position; in fact, Herrera did not even realize she was cutting Plaintiff's specific position. Trial Tr. 264. After Plaintiff was terminated, her position remained unfilled in 2008 and 2009. Trial Tr. 268.

There was absolutely no credible evidence that Plaintiff was singled out for termination on the basis of her gender. Indeed, the Sheriff's Office initially advocated funding Plaintiff's position. Moreover, Plaintiff never alleged – much less proved – that she was harassed by anyone other than Sullivan; and Sullivan stopped working at the Sheriff's Office approximately eight months before Plaintiff was terminated.

Plaintiff's response to these evidentiary deficiencies is to suggest that the jury simply chose not to believe Herrera's testimony. She also argues that financial data on certain spreadsheets shows that Herrera's testimony was false and that Plaintiff was the only person terminated in the entire Sheriff's Office. However, these spreadsheets were never offered into evidence at trial. There is absolutely no basis for considering any evidence not presented to the jury at trial in determining the reasonableness of its

verdict – much less Plaintiff's theories regarding that purported evidence. Herrera's testimony was undisputed and unimpeached. The jury's verdict on Plaintiff's § 1983 claim against all Defendants was in direct conflict with the evidence and cannot stand. Judgment must be entered for the Defendants.

### CONCLUSION

As a matter of law, the evidence presented at trial was insufficient to allow any rational jury to find in favor of Plaintiff on either of her claims. Nonetheless, a new trial is unnecessary; Plaintiff failed to prove her claims as a matter of law. Judgment is entered in favor of Defendants on all counts.

Date: _October 7, 2010_

JOHN W. DARRAH
United States District Court Judge