UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY PASSANANTI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 08-cv-2803 |
| v. | ) |
| | ) Judge John W. Darrah |
| THE COUNTY OF COOK, ILLINOIS; | ) |
| COOK COUNTY SHERIFF'S | ) |
| DEPARTMENT; and | ) |
| JOHN P. SULLIVAN, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Kimberly Passananti, brought this action against Cook County; the Cook County Sheriff's Office; and John P. Sullivan, a former employee of that office, alleging sex discrimination and harassment under Title VII of the Civil Rights Act of 1964 and a violation of her right to equal protection under the Fourteenth Amendment and 42 U.S.C. § 1983. The case was tried before a jury from June 7, 2010, to June 9, 2010. At the close of their case in chief, Defendants moved for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(a). The Court took the motion under advisement and submitted the case to the jury.

On June 10, 2010, the jury returned a verdict for Plaintiff on all counts. The Court withheld entry of the verdict, pending resolution of Defendants' Rule 50(a) motion. Defendants then filed a renewed motion for judgment as a matter of law, pursuant to

Rule 50(b). On October 7, 2010, the Court granted Defendants' motion in its entirety. See Docket No. 123 (the "Opinion").

The Court held that the evidence presented at trial was insufficient to allow any rational jury to find in Plaintiff's favor on any of her claims. On October 18, 2010, Plaintiff filed a timely motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), asking the Court to vacate the judgment in Defendants' favor. The Court set a briefing schedule, granting leave for Defendants to file a response and for Plaintiff to file a reply. On November 9, 2010, Defendants filed a response. Plaintiff never filed a reply. The motion is ripe for ruling.

## LEGAL STANDARD

The only information Plaintiff places under her "Standard of Review" heading is that a motion made pursuant to Rule 59(e) must be made within 28 days after the entry of judgment. Plaintiff does not set forth any substantive standard to be used in considering a motion to reconsider a final judgment.

That standard, however, is clear. "The only grounds for a Rule 59(e) motion . . . are newly discovered evidence, an intervening change in the controlling law, and manifest error of law [or fact]." *Local 73, Serv. Employees Int'l Union v. Argonne Nat'l Lab.*, No. 05 C 2772, 2006 WL 695532, at *2 (N.D. Ill. Mar. 13, 2006) (*Local 73*) (quoting *Cosgrove v. Bartolotta*, 150 F.3d 729, 732 (7th Cir. 1998)). A motion for reconsideration cannot be used to introduce new legal theories for the first time, to raise legal arguments that could have been heard during the pendency of the previous motion, or to present evidence that could have been adduced during the pendency of the original

2

motion. *Publishers Res., Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (citation omitted). "Once judgment has been entered, there is a presumption that the case is finished, and the burden is on the party who wants to upset that judgment to show the court that there is good reason to set it aside." *Hecker v. Deere & Co.*, 556 F.3d 575, 591 (7th Cir. 2009). The movant must "clearly establish" grounds for setting aside the judgment. *Local 73*, 2006 WL 695532, at *2 (citing *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006)).

## ANALYSIS

Plaintiff does not identify any newly discovered evidence or change in the law. Instead, she contends that the Court ignored evidence, erroneously made credibility determinations, and improperly construed inferences against Plaintiff. Plaintiff also argues that Defendants' Rule 50(b) motion should have been rejected as untimely.

With regard to Plaintiff's Title VII, hostile-work-environment claim, Plaintiff merely cites to the evidence she believes supports her claim and argues that that evidence was ignored. Specifically, Plaintiff asserts that "[t]he evidence at trial showed that the Plaintiff was referred to as a 'bitch' on numerous occasions and referred to other women in the same manner."[1] Plaintiff also asserts that she was transferred to a secretarial

---

[1] Presumably, Plaintiff means to argue that the evidence showed that *Defendant Sullivan* referred to other women in the same manner. However, Plaintiff specifically notes that the Court sustained Defendants' objection to Plaintiff's testifying about whether she ever heard Sullivan refer to other women in a similar manner. *See* Docket No. 125, at 2 n.2. She has not taken issue with that ruling in the instant motion or in her opposition to Defendants' motion for judgment as a matter of law. Nor does she now argue that it constitutes plain error. Moreover, the Court specifically observed that Sullivan had referred to another female employee as an "F'n bitch." *See* Opinion 14.

3

position, accused of having sex with an inmate, charged with criminal conduct, stripped of her authority to talk to other female investigators, and, ultimately, terminated.

Plaintiff fails to cite to anything in the record to support many of her factual assertions; and at any rate, most of them were considered in the Opinion. More importantly, Plaintiff makes no effort to argue that these purportedly overlooked facts would have had any effect on the judgment. The Court's holding was not based on a lack of evidence showing that Plaintiff was treated poorly. Instead, the Court acknowledged that Plaintiff was treated poorly but held that she failed to prove she suffered any maltreatment *because she is a woman* or that this treatment became so severe or pervasive that it rendered her work environment hostile as a matter of law. Plaintiff's motion for reconsideration presents no reason to disturb that holding.

Plaintiff's failure to prove the existence of a hostile work environment alone provides sufficient grounds for entry of judgment in Defendants' favor. The Court also held, however, that Defendants successfully proved that Plaintiff failed to take advantage of reasonable measures put in place by her employer to correct sexually harassing behavior. Plaintiff challenges this finding, as well. As explained in the October 7 Opinion, when no tangible employment action is taken against the plaintiff-employee in the course of harassment, an employer may raise an affirmative defense to liability. *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998) (*Ellerth*). To prevail on this "*Ellerth* defense," an employer must show by a preponderance of the evidence (1) that it took reasonable measures to prevent and promptly correct any sexually harassing behavior and (2) that plaintiff unreasonably failed to take advantage of preventive or

corrective opportunities or to avoid harm otherwise. *Id.* After reviewing the evidence presented at trial, the Court held that no rational jury could find that Defendants failed to prove this defense. Defendants showed the existence of a policy for dealing with complaints of sexual harassment, and Plaintiff testified as to her knowledge of those policies – even acknowledging that she trained cadets on the procedures for making a complaint of sexual discrimination. At trial, she admitted that she did not follow those procedures. Instead, she chose to discuss some of Sullivan's conduct with Carmelita Wagner, Executive Director of the Cook County Sheriff Training Institute – Wagner's supervisory authority was not addressed – and to write a letter to the Sheriff's outside counsel. Plaintiff admitted that the letter to outside counsel did not contain a request for any type of investigation into Sullivan's conduct and that she made no separate request for any remedial action. That evidence showed that Plaintiff unreasonably failed to take advantage of the procedures she indisputably knew were in place.

Plaintiff now argues that the Defendants waived any right to assert the *Ellerth* defense by virtue of failing to plead it as an affirmative defense and that the defense was inapplicable because Plaintiff *did* establish a tangible employment action. Both of these arguments are frivolous. As discussed below, the only adverse employment action presented at trial was Plaintiff's termination; and Plaintiff failed to prove that it had anything to do with her gender. More importantly, as noted in the October 7 Opinion, the jury was specifically instructed on the elements of this defense. *See* Opinion 17 (citing Trial Tr. 428-29). Plaintiff did not object to the giving of that instruction. Indeed, the

instruction was submitted along with the jointly submitted proposed pretrial order. Therefore, Plaintiff's post-judgment objection is untimely. *See* Fed. R. Civ. P. 51(c)(2) (providing that an objection to a jury instruction is timely if made at the jury-instruction conference or, if a party was not informed of an instruction, promptly after learning that the instruction has been or will be given).

The remainder of Plaintiff's argument regarding the *Ellerth* defense simply rehashes arguments made in opposition to Defendants' motion for judgment as a matter of law. She argues that the Court "simply chose to believe the Defendants [*sic*] argument and disregard the facts presented by the Plaintiff at trial" regarding her letter and her discussion with Wagner. *See* Docket No. 125, at 3. In so arguing, Plaintiff has shown no misapprehension of law or fact; she merely contends this Court committed a misapprehension of reasoning. Such arguments are insufficient to support a motion under Rule 59(e). Accordingly, Plaintiff's motion to reconsider is denied as to her Title VII claim.

Plaintiff next argues that the Court improperly limited her § 1983 claim to her claim of discriminatory termination by failing to consider other alleged adverse employment actions. Plaintiff also argues that even if her claim was limited to discriminatory termination, the Court erred in determining that she failed to prove it.

Plaintiff now asserts that her § 1983 claim was based upon her working environment, disciplinary actions taken against her, her reassignment, and her termination. In the October 7 Opinion, the Court noted the difficulty in getting Plaintiff to commit to any specific theory as to how she was denied equal protection under the

law. The Court specifically identified an on-the-record conversation with Plaintiff's counsel in which her counsel stated that the gravamen of Plaintiff's § 1983 claim was discriminatory termination. *See* Opinion 18-19. Additionally, the Court discussed a note from the jury regarding some apparent confusion as to Plaintiff's claims. The jury asked the following question: "[C]an compensatory damages be awarded for discrimination in the workplace, but nothing to be awarded if we find that her termination was due to budget cuts rather than discrimination?" Opinion 7 (quoting Trial Tr. 443). With Plaintiff's agreement, the Court responded to the question by saying that Plaintiff was required to prove by a preponderance of the evidence that she was terminated by the Defendants because of her gender and that the jury must find for the Defendants if she failed to do so. *Id.* 8 (citing Trial Tr. 450). Nonetheless, Plaintiff now seeks to identify a variety of other discriminatory conduct and assert that she was entitled to judgment for reasons other than her claim of termination. Plaintiff's present assertion that her § 1983 claim was premised on anything other than her termination marks yet another instance of her now-evolving theories of discrimination. The Court finds no error in limiting Plaintiff's § 1983 claim to one for discriminatory termination.

Plaintiff also argues that the Court erred as to her claim that she was terminated on account of her gender by failing to consider certain evidence regarding personnel appropriations for the Sheriff's Office. That argument is also unpersuasive.

In their motion for judgment as a matter of law, Defendants argued that Plaintiff failed to rebut the testimony of Alexis Herrera, Chief Financial Officer for the Sheriff's

7

Office, who testified that Plaintiff's position was eliminated, along with 43 others, as a result of county-wide budget cuts.

In her response to Defendants' motion for judgment as a matter of law, Plaintiff argued that the jury simply chose not to believe Herrera and that certain evidence showed that Plaintiff's position was the only one out of those eliminated that actually had anyone occupying it. She further argued that a historical analysis of the Sheriff's budget proved Plaintiff was not terminated as part of budget cuts, specifically stating as follows:

> Trial Exhibit 2 showed conclusively that Ms. Herrera's testimony was false. Although contending that she was charged with reducing personnel and payroll for 2007, the historical analysis showed that the Sheriff's FTE (fulltime equivalent) position rose from 6,856.6 to 6,874.3. See Exhibit 6. In addition, the appropriation rose from 337,998,421 to 338,129,452, a difference of $131,031. Id. The difference is approximately the amount Kim would have earned with her salary and benefits as Deputy Director.

Docket No. 104, at 13. Defendants replied by arguing that this information was not presented through any testimony at trial:

> Not only did plaintiff fail to question Herrera about Trial Exhibit 2, plaintiff failed to produce any witness on her behalf to testify about Trial Exhibit 2. Plaintiff's conclusions about what Trial Exhibit 2 may discuss are conclusory, unclear and, in any event, inadmissible and fail to controvert Herrera's testimony in any way.

Docket No. 117, at 14.

The Court agreed. No information regarding any increased appropriations was presented during either party's case in chief. Indeed, because neither party filed any trial exhibits on the docket, other than those submitted in connection with Defendants' motion for judgment as a matter of law, it was difficult to determine whether the exhibit in question had been offered into evidence. After reviewing the record, the Court found that

Exhibit 2 had not been offered into evidence or presented to the jury. Accordingly, there was no reason for the Court to consider that evidence – much less any inferences Plaintiff purportedly derived from that evidence – after trial.

Plaintiff's inconsistent identification of exhibits further confounds the issue. In the above-quoted paragraph from Plaintiff's response brief, for example, Plaintiff refers to "Trial Exhibit 2" but directs the reader to the attached "Exhibit 6," which, in turn, is marked with a sticker labeled, "Group Ex. 2." *See* Docket No. 104-7. Exhibit 6 contains two pages. The first page appears to be a table of contents. The second page is some sort of spreadsheet or chart labeled "Sheriff – Historical Analysis," which contains graphs and figures under the following headings: "total appropriations," "total expenditures," "FTE positions appropriated," "personal appropriations," and "personal expenditures." The figures are listed for 2003 through 2007. Presumably, Plaintiff was asserting that the document attached as Exhibit 6 to her brief and "Trial Exhibit 2" are one and the same.

In resolving Defendants' motion for judgment as a matter of law, the Court determined that "Trial Exhibit 2" was never admitted into evidence. This finding was based on a discussion the Court had with the parties on the record at the close of trial. While reviewing the list of exhibits that had been admitted into evidence, Plaintiff asserted that certain "budget documents," "listed as 1, 2, and 3 in Plaintiff's exhibits" were in evidence. Trial Tr. 440. The Court asked if they were used in examining any witnesses and stated that the only documents in evidence would be those specifically referenced at trial. *Id.* Defense counsel then stated that all pages used in examining a witness had already been identified by name. *Id.* Plaintiff did not persist in arguing that

her budget documents were in evidence, and there was no further discussion on that subject.

Based on that discussion with the parties, the Court concluded that the document Plaintiff was referring to as "Trial Exhibit 2" (i.e., "Exhibit 6") in opposing Defendants' motion for judgment as a matter of law was the "budget document" listed as number 2 in Plaintiff's exhibits, which, as discussed at the end of trial, was not admitted. This conclusion was further supported by a review of the trial transcript, which contains no testimony regarding rising personnel numbers or total appropriations.

Plaintiff now asserts that this conclusion was erroneous and directs the Court to pages 254-55 of the trial transcript. However, the only exhibit referenced on those pages was identified as "Exhibit Personnel Services," which was presented only in the context of Defendants' examination of Herrera. Herrera testified that "Exhibit Personnel Services" was a summary of positions for the Department of Community Supervision and Intervention and that the far-left corner of that document showed a list of all position grades. *See* Trial Tr. 255. Tellingly, no such list of grades appears anywhere on the two pages of Plaintiff's "Exhibit 6" (i.e., "Trial Exhibit 2"), so it is unclear how these exhibits could possibly be one and the same.

Plaintiff also directs the Court's attention to her rebuttal closing argument at trial, during which Plaintiff argued that "Exhibit 2" undercuts Herrera's testimony by proving that personnel appropriations increased the year Plaintiff was terminated. *See* Trial Tr. 419. When the Court interjected to say that it did not have that exhibit in evidence, Defense counsel said, "It should be, your Honor." *See id.* 419-20. As discussed above,

however, further discussion on that topic was held after closing arguments; and the Court informed the parties that pages would not be considered in evidence unless specifically referenced at trial, regardless of any pretrial agreements made by the parties.[2]

In any event, even if "Exhibit 2" = "Trial Exhibit 2" = "Exhibit 6" = "Group Ex. 2" = "Exhibit Personnel Services" = "Sheriff – Historical Analysis," and even if that document (by some name) had been admitted into evidence and sent to the jury room, it remains that the jury was never presented with any testimony or explanation necessary to interpret the data presented on that chart, other than Plaintiff's counsel's final conclusion in his rebuttal argument that was unsupported by any evidence admitted and presented to the jury during the course of the trial. As the jury was instructed, statements by counsel are not evidence, Trial Tr. 387; and counsel's conclusory theories are insufficient to rebut Herrera's trial testimony. Accordingly, judgment for Defendants on Plaintiff's § 1983 claim will not be disturbed.

The final argument raised in Plaintiff's motion to reconsider is that Defendants' Rule 50(b) motion was untimely and should never have been considered. This argument comes too late. Defendants' motion was filed pursuant to a briefing schedule set at a status hearing attended by both parties. *See* Docket No. 96. Plaintiff did not object to that schedule. Nor did she present an objection to the timing of that motion in the

---

[2] The Court specifically stated, "I expressly told you at the onset of this that nothing would be considered to be in evidence by virtue of the fact that it was listed in the pretrial order and agreed to be in evidence. I directed the parties to introduce any exhibits they wished to introduce at the time of trial and to object to any exhibits that they wished to object to at the time of trial. Have I missed anything that was the subject of these proceedings that was introduced in this courtroom? Have I missed anything?" Trial Tr. 440. Plaintiff's counsel responded, "No." *Id.*

11

response brief she filed on August 12, 2010 (one day later than the modified deadline set by the Court in response to Plaintiff's motion for an extension of time).³ At any rate, Rule 50(b) provides that a party can renew a motion for judgment as a matter of law "[n]o later than 28 days after the entry of *judgment.*" Fed. R. Civ. P. 50(b). Because the Court withheld entry of judgment on the verdict pending resolution of Defendants' Rule 50 motions, that clock never ran. *Cf. Collins v. Ill.*, 830 F.2d 692, 701 (7th Cir. 1987) (discussing previous version of Rule 50(b) and noting that, like the current version, the clock begins to run upon *entry* of the verdict, not *reception* of the verdict, as was the case before the rule was amended in 1961).

## CONCLUSION

A motion for relief from the judgment under Rule 59 is an extraordinary remedy "reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) (citing *Dickerson v. Bd. of Educ. of Ford Heights, Ill.*, 32 F.3d 1114, 1116 (7th Cir. 1994)). Plaintiff has not shown this to be such an extraordinary case. Accordingly, *Plaintiff's Motion to Reconsider Court's Judgment Entered October 7, 2010 Puruant [sic] to Fed.R.Civ.P.59(e) and to Vacate the Court's Judgment* is denied.

Date: 1-18-11

JOHN W. DARRAH
United States District Court Judge

---

³ Plaintiff did file a *Motion for Entry of Judgment on Jury Verdict*, in which she argued that the effect of the Court's delay in entering a verdict "is to artificially enlarge the mandatory time limits enforced by Rule 50(b) and Rule 59." Docket No. 98 ¶ 20. She did not contend, however, that Defendants' Rule 50 motion should not be considered. Instead, she asserted that she was entitled to post-judgment interest attributable to the delay in entering the verdict. *Id.* ¶ 22.

12